## A. D. HENDERSON v. CLARENCE SCOTT.

Eastern Section.    August 29, 1925.

Certiorari denied by Supreme Court December 19, 1925.

1. **Extortion.  Good faith not defense of extortion under section 6353 Shannon's Code.**
   In a civil suit under section 6353, Shannon's Code for demanding and receiving higher fees than allowed by law the officer's good faith and honesty therein constitute no defense.

2. **Extortion.  Truant officer receiving fees for serving papers guilty of extortion.**
   Under section 1461a20 Shannon's Code, a truant or attendance officer is not allowed to charge for making arrests or serving papers as an officer and making such charges renders him liable for extortion under Section 6353 Shannon's Code.

3. **Extortion.  That fee was paid to justice and not to officer not defense to extortion.**
   In a suit to recover the penalty under section 6353 Shannon's Code for a truant officer charging for serving papers the fact that the fees are paid to the Justice when officer not present is no defense where he later collected the money.

Appeal in Error from Circuit Court, Cocke County; Hon. Jas. L. Drinnon, Judge.

Reversed.

Chas. C. McNabb, of Newport, for plaintiff in error.

O. L. McMahan, of Morristown, for defendant in error.

SNODGRASS, J.    The plaintiff sued the defendant before a justice of the peace for Cocke county, to recover the sum of $50 as a penalty alleged due and recoverable by the plaintiff, because that defendant did on or before January 19, 1924, demand and receive of plaintiff certain officer's fees amounting to $2 in the case of the State of Tennessee v. A. D. Henderson, before Oscar O'Neil, a justice of the peace for Cocke county, to which he was not entitled under the law, said sum of $50 being the penalty provided by statute in such cases.

The cause was tried before Esq. J. S. Parks, a justice of the peace for Cocke county, who gave judgment for the plaintiff for $50, the amount of the penalty. The cause was appealed and heard before his Honor, the circuit judge, who adjudged that the plaintiff was not entitled to any relief and dismissed the suit, taxing the plaintiff and his surety with the costs of the cause. Motion for new trial was had and the same was overruled. Exception was made and appeal prayed for and obtained by the plaintiff in error to this court, and he has assigned errors as follows:

(1)   "The court erred in dismissing plaintiff's suit and taxing him with the costs of the cause."

(2)   "The court erred in overruling plaintiff's motion for a new trial."

One of the grounds for a new trial was that under the undisputed evidence introduced in said cause plaintiff was entitled to a verdict in his favor for the penalty sued for, and under the evidence introduced in said cause plaintiff was entitled to judgment in his favor.

Treating the assignment, therefore, as equivalent to saying that there was no evidence to support the judgment of dismissal, and that the undisputed evidence entitled the plaintiff to a judgment in his favor, we have examined the evidence and concur in this view.

The proof shows that Clarence Scott, during the month of January, 1924, was one of the truant or attendance officers for Cocke county, Tennessee, regularly, employed by the board of education at a salary of $75 per month. He was also a deputy sheriff at the time. During said month of January, 1924, he arrested the appellant for failing to send his children to school. When the case was called in the magistrate's court it was found that by agreement between Scott and Henderson the case had been compromised, by Hender-

son agreeing to pay all the costs in the case and to send his children to school. The justice testified that "Scott agreed with him (meaning Henderson) to dismiss the case upon the payment of the costs, and this was done. I do not know whether Scott was present when the costs were paid to me or not. Henderson paid the costs to me and I paid the $2 to Scott as his part of the costs. He received costs in several other cases of the same nature from me. I do not remember the cases now, my docket will show."

Scott was not present when these costs were paid by Mr. Henderson to the justice, and it is insisted for him in the brief, though not by him in the proof, that the reception by him of the costs was really an inadvertence and unintentional, and that having so received it, and the justice of the peace refusing to receive it back, and not knowing where to place it, or what to do with it until instructed, his possession of the cost was involuntary and, therefore, not unlawful. But the proof is not susceptible of this construction. We think it is clear that he knew he was receiving $2 as costs in this case, as a matter of right at the time he got it, and that afterwards, on further reflection, he decided to return it.

On cross-examination Mr. O'Neil, the justice of the peace, testified further as follows:

"There was some talk about Scott taking the matter of costs up with the board of education to determine whether or not he was entitled to the fees for serving papers in the cases. Sometime after this case of Henderson (meaning State against Henderson) was dismissed, Scott came to my office to collect some costs due him, and wanted me to go over the docket with him. I told him I was busy, for him to go ahead, and he signed the docket for costs in a number of cases and I paid the money over to him. The $2 I had collected from Henderson as costs was included in the settlement. I think there were costs in a number of similar cases, as well as several which were not cases for violation of the school law. My docket will show. I paid it all to him at once. At this time there was something said about whether Scott was entitled to costs for serving process as traunt officer, and I told him I thought he was entitled to these costs just as in any other case, but that I did not know. If he was not entitled to same I didn't know it then, and I don't know it now. When Scott brought me the check for twenty some odd dollars (which of course was afterwards) and stated that the board of education had ordered it returned, I told him I could not receive the money." . . .

He stated on original examination that his record was not itemized, but that he knew what composed the $2; $1 for serving the warrant, and $1 for serving four subpoenas, and that Scott received that amount as costs in the case. And Scott of course knew when he ex-

amined and receipted for the costs in this case what service he had rendered in the case, and although the judgment may not have specially itemized his cost, he knew that it was there for him if he wanted to take it, and he took it.

Roy T. Campbell, Superintendent of Schools for Cocke county, testified that he was such, and that Clarence Scott, the defendant in error, was elected or appointed as one of the attendance officers for Cocke county by the board of education, and was acting as such attendance officer when he arrested A. D. Henderson for violating the school laws. He was arrested for failing to send his children to school. That Scott was being paid a salary of $75 per month for his services as one of the county attendance officers at the time he arrested A. D. Henderson, and that he was acting as attendance officer when he made the arrest; that, he knew about it at the time. Henderson was released upon payment of the costs in the case, after agreeing to place his children back in school. That this was sometime in January of this year (1924). He stated that sometime back in the fall, Scott came to him and asked him whether he was to have the officer's costs for serving papers or not, and that he had told him that he did not know, as nothing had been said about it. He did not know why, but that he had discussed the matter with him a number of times, and also with members of the board. That he (Scott) had requested him to bring the matter before the board of education, and that he did this at regular meeting in January, 1924, though the board had not been called together for this purpose. That this was on the same day that the present suit was set for trial before the magistrate; that Scott had collected fees in a number of cases for violating the school laws, the fees being paid into Esquire O'Neil's court, and he had receipted for them on the docket. He stated he was holding the fees subject to the orders of the board. A motion was entered on the minutes of the board ordering Scott to turn the money he had over to Oscar O'Neil, justice of the peace, to be deposited in the trustee's office to the credit of the school fund, and he advised Scott of the board's ruling. Sometime later, possibly the next day or so, Scott offered a check to Esquire O'Neil for something over $20, and he would not receive it, and the check was turned over to him, the Superintendent, to be placed in the school fund.

Scott himself testified as follows:

"Yes, I received the $2 fees as testified to by Esquire O'Neil in the case of the State v. A. D. Henderson, for violating the school laws. I was paid this by Squire O'Neil along with a lot of other costs I had in his court. I had arrested Henderson for failing to send his children to school. When the case came up for trial it was compromised by Henderson agreeing to pay all the costs of the cause and send his children to school. 'I agreed with him that the case could be

compromised that way, but I was not present when it was dismissed. Esquire O'Neil collected the costs and sometime later paid it over to me with some other costs. This was in January of this year. In collecting fees that are due me from the magistrate I just go down there and look through his book and when I come to a fee that is due me I receipt for it and he pays them to me all together. The $2 in this was collected in that way, just got it along with others. I had collected something over $20 in fees in cases for violating the school laws. I did not know whether it was legal to accept the fees or not and I went to the Superintendent. Some time back in the fall of 1923 something was said about not being legal for me to receive the fees in these school cases and I went to Superintendent Campbell to find out about it. He said he didn't know about it. I talked with some of the members of the board of education about it and they told me that they thought I would be entitled to the fees. Garfield Thomas, a member of the board, told me the day that I was elected Attendance Officer, that the costs would help defray expenses, but I wanted the board to act on it. I requested the Superintendent to call the matter up before the board and get it settled. The board finally had a meeting on the same day that this case was tried before Squire O'Neil, and advised me to turn the money that I was holding over to the county to be placed in the school funds. I immediately took my check for the full amount, something over $20, to Oscar O'Neil and he said he had no right to the money, and it was turned over to Superintendent Campbell to be placed with the school funds. I did not collect anything direct from A. D. Henderson. All the costs which I got was paid to me by Oscar O'Neil. I did not want any fees I was not entitled to and that is why I wanted to have the board pass on the question.''

On cross-examination Scott further testified:

''Yes sir, I took this matter of fees up with the Superintendent and board members in the fall of 1923, but no action was taken by the board until it met in January, 1924. I had requested the Superintendent and members of the board back in the fall of 1923 to act on the matter and had repeatedly requested such action since that time. I tried to get an understanding before any costs were collected and also afterwards. I didn't want any costs that didn't belong to me. I told Squire O'Neil at the time he paid a lot of costs to me that it hadn't been settled as to whether I was supposed to have the costs in school cases and I asked him to go over his docket with me but he didn't take the time to do it, said he would do it later. He told me that he thought I was entitled to the costs just as in other cases. I told him I would get a statement of the amount of costs paid me in those cases and if the board didn't allow it I would turn it back. Yes, the costs was figured out and collected by Squire

O'Neil just as he does in all cases and I signed it off on his docket and he paid me all together. I was the only person who could sign it off, as it was on there in my name. Yes, I knew I was getting these costs in the school cases. No, I did not make any motion before any court to find out whether I was entitled to these fees, I went to the board of education who hired me. I collected fees in a number of these cases, some of them had appealed their cases and I did not collect in them. I did not make any offer or attempt to return those fees I had collected until after this suit was brought against me by Henderson, but I had been trying to find out for some time whether I was entitled to them or not. I had collected fees in all these school cases that had submitted, some of them did not submit. I suppose I would have taken the fees in those cases too if they had submitted and the costs paid in to the magistrate. When the board ordered me to pay the costs which had been paid over to me over to the school fund I did so, but that was after this suit was brought against me.''

C. D. Balch, another member of the board was called, who testified as follows:

''I am a member of the board of education for Cocke county. Clarence Scott took the question of fees in school cases up with me some time back in the fall of 1923. This was before A. D. Henderson was arrested. I told him I thought he was entitled to the fees. He requested me several times to have the board act on the question. Superintendent Campbell finally called the board's attention to the matter at a meeting in January, which I think was on the day this suit was tried before the justice of the peace. The board asked a lawyer about it and was advised that it would be proper and legal for the costs to be collected and turned over to the school funds. Clarence Scott had reported to the board that he had collected some such costs. The board entered a motion on its minutes for Scott to turn these costs over to the county school funds. I think he did this as requested by the board.''

From the evidence it is evident that Mr. Scott knew that he was not entitled to receive this cost, but sought the advice and sanction of the board, some of whom advised that he was entitled to receive it. We think he did receive it as a matter of right, and that when he did receive it there was no purpose to receive it as a mere custodian. It should not have been collected or exacted. The school board had no right to this character of claims, and the law was sufficient to advise the officer in this particular. If Mr. Scott believed, or was advised that he had a right to receive such funds, while it might be material in a criminal prosecution, his good faith can make no difference in a civil case.

"In a civil suit under this section (being section 6353 of Shannon's Code) for demanding and receiving higher fees than allowed by law, the officer's good faith and honesty therein constitutes no defense." Plyly v. Allison, 113 Tenn., 500 S. W., 475. The section referred to is as follows:

"If any officer demands or receives any other or higher fees than are prescribed by law, he is liable to the party aggrieved in the penal sum of fifty dollars, to be recovered before any justice of the peace, and is also guilty of a misdemeanor in office."

The inhibition against this school officer receiving fees is found in that portion of section 1461a20 of Shannon's Compilation, which concludes as follows:

. . . "And power to arrest without warrant, all truants as aforesaid, and place them in some public school, unless the parent, guardian or person having charge or control of said child shall at once place them in some other day school as aforesaid; such attendance officers shall serve the legal notices and subpoenas of the court, without further fee or compensation than that paid by the board of education as aforesaid, and he shall carry into effect such other regulations as may lawfully be required by the board electing him."

By an amendment to the last quoted section embodied in chapter 143 of the Public Acts of 1919, attendance officers are clothed with authority to make instant arrests for the violation of any law of the land, but in no case shall he be allowed to serve papers eminating from the office of a justice of the peace or any court of record.

In the case of Marr v. Murphy, 132 Tenn., 460, construing this law the court said:

"The statutory provisions governing this action are found in Shannon's Code, sections 6352, 6353, which provide that no officer is allowed to demand or receive fees, or other compensation, for any service further than is expressly provided by law, and (section 6353) that, if any officer demands or receives any other or higher fees than are prescribed by law, he is liable to the party aggrieved in a penalty of $50."

"It is observed that between the word 'demand' and the word 'receive' there appears the disjunctive 'or,' and we are of opinion that, so far as a civil action for the prescribed penalty is concerned, there need not be a precedent demand to the receipt of fees, where unwarrantably collected. This is made the more obvious when we look to the criminal statute governing extortion (Shannon's Code, section 6714), where guilt is made to depend upon the officer 'demanding and receiving' a greater fee or compensation than is allowed. The distinction thus taken be-

tween the civil and the criminal action is made in other jurisdictions.''

And it can make no difference that the fee was not received directly from Henderson, but as costs delivered to the justice for him and even under a general judgment for costs, for if it was deposited by Mr. Henderson with the justice of the peace as such, or under a general judgment for costs, and received as such, the case is the same.

The case of Williams v. State, 2 Sneed, 161, was a case of extortion. The court said:

"But it is contended that the fees in question were received upon a judgment of the justice, and, therefore, not criminal. It is true that the magistrate gave a judgment for debt and costs. These costs were not set out in items, and the judgment could only cover such costs as were legal, and gave no sanction to the collection of such as were not due. Under such a judgment the officer must collect the costs at his peril, and beware that he extorts none to which he is not by law entitled, and for which the defendant is not legally liable. If he transcends these limits, he is guilty of extortion. In this case the debt and costs were left, with the justice, for defendant, with a caution against taking the fees for summoning the witnesses in question, but he received it under a claim of right." . . .

This is very much like the case at bar. The defendant in error received these fees, being doubtful of his right, but not as any forced or necessary custodian.

Under the authorities we think the circuit judge was in error in dismissing the suit. His decree is therefore reversed, and judgment is entered here in favor of the plaintiff for the sum of $50, together with the costs of the cause.

Portrum and Thompson, JJ., concur.